**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **ELDRIDGE POLLARD** | * | **CIVIL ACTION NO. 24-224** |
| **VERSUS** | * | **JUDGE ELDON E. FALLON** |
| **LOUIS DEJOY,** | * | **MAGISTRATE JUDGE** |
| **POSTMASTER GENERAL,** | | **DONNA PHILLIPS CURRAULT** |
| **UNITED STATES POSTAL SERVICE** | * | |

\*     \*     \*     \*     \*     \*     \*

**ORDER & REASONS**

Before the Court is a Motion for Summary Judgment, R. Doc. 77, and a Partial Motion for Summary Judgment, R. Doc. 81, filed by Defendant David Steiner, Postmaster General of the United States Postal Service. Plaintiff Eldridge Pollard opposes both Motions. R. Docs. 89, 90. After considering the record, briefing, and applicable law, the Court rules as follow.

## I.    BACKGROUND

This is an employment discrimination case against the United States Postal Service ("USPS"). Plaintiff Eldridge Pollard began working for the USPS in 1998. R. Doc. 1 at 9. Plaintiff has held various positions with the USPS including window clerk, mail processing clerk, and acting supervisor of the New Orleans Processing and Distribution Center. *Id.* at 3. In August 2010, Plaintiff filed an Equal Employment Opportunity ("EEO") Complaint alleging that the USPS wrongfully limited his work after he suffered an on-the-job injury. R. Doc. 89-1 at 2–3. The EEOC closed the Complaint in August 2010. *Id.* at 3. Plaintiff filed a second EEO Complaint on January 19, 2021, based on the USPS's alleged refusal to promote him to ten different positions from 2010-2020. *Id.* at 6. Plaintiff's second Complaint closed in 2021. R. Doc. 1 at 5.

The instant litigation centers on a handful of employment actions which occurred between April 2021 and January 2023. First, in April 2021, Plaintiff became ill after receiving a COVID-

1

19 vaccination and took several days off work. R. Doc. 89-1 at 6. Plaintiff sent a doctor's note to his immediate supervisor, Patrice Jenkins, who allegedly, "refused to properly accept or recognize [his] medical excuse" and "initiated discipline." R. Doc. 89-1 at 5, 7.

Second, Plaintiff alleges that in June 2021, his physician changed his medication to better suit the working hours of 6:30 a.m. – 3:30 p.m., known as the "Tour 2" shift. R. Docs. 33 at 10–11, 89 at 6. Plaintiff asked the USPS to permanently assign him to Tour 2. R. Doc. 89 at 6. Ronnie Curry, the Senior Manager of Distribution Operations, allegedly denied this request without providing a reason. *Id.* Plaintiff avers that following this, the USPS "improperly kept [him] out of work" from July 7, 2021, to September 17, 2021, even though suitable work within Plaintiff's medical restrictions was available. *Id.* at 9.

Third, in June 2021, Plaintiff applied for job #95575477 as a Sales & Service Associate. R. Docs. 90 at 13, 33 at 71–72. The USPS uses an employment bidding system that prioritizes applicants with seniority. R. Doc. 77-5 at 1–2. Plaintiff was the senior bidder for job #95575477 and was pre-awarded the position. R. Docs. 77-8 at 1, 89-1 at 43. "Pre-awarded" meant that Plaintiff was guaranteed the job so long as he completed the required training and paperwork. R. Doc. 77-5 at *2*. Plaintiff submitted medical documentation to USPS demonstrating he could perform the essential requirements of the job. R. Doc. 90-3 at 21. Management then scheduled him for an October 2021 training. R. Doc. 89-1 at 11. Plaintiff arrived at the training but was removed from the class by the instructor, Marie Walgamott, after Walgamott received an e-mail indicating that Plaintiff's paperwork was deficient and he was ineligible for training. R. Doc. 89-1 at 11–12. Plaintiff alleges that the USPS intentionally delayed his training and removed him from the class in an effort to prevent him from obtaining job #95575477. R. Doc. 90-1 at 12. Plaintiff maintains

this was done by USPS employees who held biased views against him due to his gender, disability, and prior EEO complaints. *Id.* at 12–14.

In January 2022, Plaintiff bid on another position as a Mailing Requirements Clerk. R. Doc. 90 at 14. Plaintiff maintains that he only bid on this position "because USPS refused to place [him] into [job #95575477]." R. Doc. 89-1 at 10. Plaintiff was the senior bidder and was pre-awarded the position. R. Docs. 77-5 at 2, 90 at 14. In April 2022, Plaintiff transitioned into this role. R. Doc. 77-5 at 4. The USPS reposted job #95575477 and awarded it to a female employee with less seniority and no disability, who Plaintiff alleges "went into the vacant position within two weeks." R. Doc. 90 at 22. Plaintiff maintains that he did not learn that the USPS gave job #95575477 to another employee until January 2023.  R. Doc. 89-1 at 10.

Finally, in January 2023, Plaintiff was working as a Mailing Requirements Clerk at the USPS Processing & Distribution Plant in New Orleans, Louisiana. R. Doc. 77-6 at 1. Annette Hampton, a USPS manager, saw Plaintiff walking around on the plant floor chatting to other employees. *Id.* at 1–2. Plaintiff's position did not require him to be on the plant floor. *Id.* at 1–2. Hampton emailed Plaintiff's direct supervisor, Roy Whitlatch, and stated she "[did not] want [Plaintiff] strolling around the Plant." *Id.* at 4. Whitlatch wrote back that he had "spoke[n] with [Plaintiff] and he informed me that he has to go on the workroom floor to get to the bathroom." *Id.* Hampton did not speak directly to Plaintiff about the incident, nor did she file a formal complaint. *Id.* at 5. Plaintiff was not disciplined or reprimanded, nor did he suffer any consequences as a result of Hampton's email. *Id.* In his Amended Complaint, Plaintiff alleges that Hampton harbored animosity toward Plaintiff because of his gender, disability status, and prior EEO complaints, and that she intentionally "attempt[ed] to block [his] bathroom access in the plant." R. Doc. 33 at 35, 31, 27.

3

Plaintiff met with an EEO Counselor on January 31, 2023, and requested pre-complaint processing. R. Docs. 19-3 at 2, 77-2 at 1. The EEOC issued Plaintiff a Notice of Right to Sue Letter in April 2023. R. Docs. 77-2 at 1, 77-8.

In January 2024, Plaintiff filed the instant ligation. R. Doc. 1 Defendant moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), R. Doc. 19, which the Court granted in part and denied in part. R. Doc. 32. The Court granted the Motion with respect to any discrimination and retaliation claims arising out of alleged acts occurring before December 17, 2022. *Id.* at 15–16. In its Order & Reasons, the Court explained that federal regulations required Plaintiff to contact an EEO Counselor within 45 days of the alleged discrimination. *Id.* at 12. Plaintiff met with an EEO Counselor on January 31, 2023. Thus, events which occurred more than 45 days earlier—before December 17, 2022—were untimely. *Id.* The Court similarly limited the scope of Plaintiff's hostile work environment claims to events occurring after January 19, 2021. *Id.* at 16. The Court explained that the "continuing violation doctrine" allowed Plaintiff to rest his hostile work environment claims on events occurring outside the 45-day administrative filing window so long as Plaintiff filed his administrative complaint while at least one act underlying his hostile work environment claims was timely and the allegations were otherwise related. *Id.* at 11. Events occurring on or before January 19, 2021, were time-barred, however, because they either were or should have been litigated in prior EEO proceedings. *Id.* at 11, 15 n. 1. The Court otherwise preserved Plaintiff's discrimination, retaliation, and hostile work environment claims.

Plaintiff filed an Amended Complaint asserting five claims against Defendant: (1) hostile work environment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*; (2) hostile work environment under Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*; (3) discrimination under Title VII, 42 U.S.C. § 2000 *et seq.*; (4) discrimination under

Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*; and (5) retaliation in violation of Section 501 of the Rehabilitation Act of 1973, *id*. R. Doc. 33 at 29–42.

## II.    PRESENT MOTIONS

Defendant submits a Motion for Summary Judgment on all claims, R. Doc. 77, and a Partial Motion for Summary Judgment on Plaintiff's hostile work environment claims. R. Doc. 81. The Court will consider arguments raised in both Motions along with their respective oppositions and replies. First, on Plaintiff's discrimination and retaliation claims, Defendant argues, *inter alia*, that two of the purportedly adverse employment actions—Plaintiff's failure to obtain job #95575477 and Hampton's complaint—were the result of nondiscriminatory employment practices. R. Doc. 77-1 at 15–18. Defendant maintains that the reason Plaintiff did not assume job #95575477 was that Plaintiff bid on another position as a Mailing Requirements Clerk, and under USPS policy, an employee automatically relinquishes their pre-awarded position when they subsequently bid on another job. *Id.* at 16. Concerning Hampton's e-mail, Defendant submits Hampton's affidavit, in which she attests that she only complained about Plaintiff's conduct because she was concerned Plaintiff was crowding the plant floor and distracting her employees. R. Doc. 77-6 at 1–2. With respect to Plaintiff's hostile work environment claims, Defendant maintains, *inter alia*, that Plaintiff has failed to present evidence that any of the adverse employment actions alleged were the result of his disability or gender, notwithstanding the fact that there was ample time to do so. R. Doc. 77-1 at 22.[1]

---

[1]    Plaintiff's opposition memorandum to Defendant's Motion for Summary Judgment on all claims, R. Doc. 77, was originally due on June 30, 2026. R. Doc. 79. The Court extended this deadline, allowing Plaintiff to file an opposition no later than July 19, 2026, two days after the close of discovery. R. Doc. 88. Plaintiff filed an opposition memorandum by this extended deadline. R. Doc. 90, That filing, however, exceeded the page limit and did not include a statement of material facts, as required by Local Rule 56.2. Plaintiff's opposition to Defendant's Partial Motion for Summary Judgment likewise failed to include a statement of material facts. R. Doc. 89.

Plaintiff opposes both Motions. R. Docs. 89, 90. In his opposition memoranda, Plaintiff maintains there is sufficient evidence to create a genuine factual dispute on all claims. R. Docs. 89 at 10, 90 at 3. Regarding the delayed training and failure to receive job #95575477, Plaintiff cites the deposition of Anita Smith who states that Plaintiff submitted medical documentation for position #95575477, she received that documentation, and she could not identify any USPS policy requiring additional documentation. R. Doc. 90 at 17; *see also* R. Doc. 89-1 at 49. Plaintiff maintains that these admissions "create genuine disputes concerning whether [the USPS] followed its own procedures, whether Plaintiff was qualified for the position, and whether Defendant's asserted legitimate, nondiscriminatory reasons are merely pretext for discrimination and retaliation." R. Doc. 90 at 3. Regarding Hampton's complaint, Plaintiff states, "the deposition testimony of Krysti Miller corroborates Plaintiff's allegations that Annette Hampton repeatedly singled Plaintiff out for disparate treatment, supporting Plaintiff's hostile work environment and retaliation claims." *Id.* at 17. Plaintiff does not include a record citation supporting this claim.[2] Plaintiff additionally submits his own affidavit in which he states he experienced an "ongoing pattern of discriminatory treatment, retaliation, obstruction of promotional opportunities, intimidation, and refusal to accommodate [his] disability beginning in January 2021 and continuing into 2023." R. Doc. 89-1 at 6.

In reply, Defendant argues that Plaintiff has failed to present any evidence of discrimination or retaliation sufficient to defeat summary judgment. R. Doc. 92. Defendant continues that Plaintiff has not shown the reasons Defendant provides for the employment actions were pretextual. *Id.* at 4–5. On the hostile work environment claims, Defendant maintains that

---

[2] Plaintiff instead cites the deposition of Anita Smith. R. Doc. 90 at 17. None of the citations to Smith's deposition support Plaintiff's assertion.

6

Plaintiff's own affidavit is replete with conclusory, argumentative, and hearsay statements which cannot be used to support his position. R. Doc. 91 at 2–3.

### III.    APPLICABLE LAW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. Fed. R. Civ. P. 56(c*)*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A fact is "material" if its resolution in favor of one party may affect the outcome of the case. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993).

### IV.    DISCUSSION

As a preliminary matter, Plaintiff's opposition memoranda include a considerable number of assertions unsupported by record citations. While the Court may, in its discretion, consider uncited materials in the record, it is not incumbent upon the Court to parse the record or construct Plaintiff's argument. Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Upon reviewing the briefing and proffered evidence in the light most favorable to Plaintiff, the Court concludes that summary judgment is appropriate on all claims.

**A. Discrimination and Retaliation: Plaintiff has failed to show that the nondiscriminatory reasons put forth by Defendant were pretextual.**

Plaintiff alleges that he was subjected to unlawful discrimination in violation of Title VII and § 501 of the Rehabilitation Act and retaliation in violation of § 501. Plaintiff has not presented, nor is the Court aware of any direct evidence of discrimination or retaliation. Because Plaintiff's case rests on circumstantial evidence, *McDonnell Douglas* supplies the governing framework for these claims. *Stroy v. Gibson ex rel. Dep't of Veterans Affs.*, 896 F.3d 693, 698 (5th Cir. 2018); *Cohen v. Univ. of Texas Health Sci. Ctr.*, 557 F. App'x 273, 277 (5th Cir. 2014) (summary calendar).

Under *McDonnell Douglas*, Plaintiff is required establish a prima facie case of either discrimination or retaliation. *Cohen*, 557 F. App'x at 277. If Plaintiff satisfies this burden, the burden shifts to Defendant to "articulate some legitimate nondiscriminatory reason" for his actions. *Id.* at 278; *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007), *abrogated by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023). "This burden on [Defendant] is only one of production, not persuasion, involving no credibility assessments." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). "If [] Defendant meets his burden and presents such a reason, then the burden shifts back to [] Plaintiff to show that the nondiscriminatory justification was mere pretext for discrimination or retaliation." *Cohen*, 557 F. App'x at 278.

The Court previously limited Plaintiff's discrimination and retaliation claims to events occurring on or after December 17, 2022. R. Doc. 32 at 15–16. Plaintiff maintains that two adverse actions occurred within this time period: USPS's failure to award him job #95575477 and Hampton's complaint about him walking across the plant floor. R. Doc. 90 at 4. Assuming *arguendo* these allegations are timely[3] and Plaintiff satisfies his prima facie case, the Court finds

---

[3]    The parties dispute whether Plaintiff's failure to obtain job #95575477 occurred on or after December 17,

that Defendant has presented legitimate, nondiscriminatory reasons for these purportedly adverse actions, and Plaintiff has failed to carry his burden of demonstrating pretext.

Concerning Plaintiff's non-selection for job #95575477, Defendant submits the declaration of Anita Smith, a USPS Operations Support Specialist. R. Doc. 77-5 at 1. Smith attests that she is knowledgeable about USPS employment practices and personally oversaw Plaintiff's bid for job #95575477. *Id.* at 1–2. In her declaration, Smith states that Plaintiff was pre-awarded job #95575477, meaning "[he] was guaranteed to receive the job so long he completed any necessary training and submitted any necessary medical documentation." *Id.* at 2. Smith goes on to state that it is USPS policy that an employee can only be pre-awarded one job at a time, and if the employee bids on another position, USPS' HR system automatically relinquishes their prior pre-awarded position. *Id.* Smith explains that this feature prevents a single employee from being pre-awarded multiple positions, and "allows the USPS to fill all of its available job concurrently." *Id.* While Plaintiff waited for job #95575477, he bid on a Mailing Requirements Clerk position. *Id.* at 3. In doing so, Plaintiff automatically relinquished job #95575477. *Id.* at 3–4. Smith concludes by attesting that Plaintiff's failure to obtain job #95575477 had nothing to do with his gender, disability, or prior EEO charges, and the sole reason why he did not receive the position was that he bid on another. *Id.* at 4.

Concerning Hampton's complaint, Defendant submits the declaration of Annette Hampton. R. Doc. 77-6. Hampton attests that, on the day in question, she witnessed Plaintiff walking around on the plant floor speaking to other USPS employees. *Id.* at 1. Plaintiff's position did not require

---

2022, as required by the Court's prior Order. Defendant argues that the allegation concerning job #95575477 is untimely—to the extent it is used to support Plaintiff's retaliation and discrimination claims—because Plaintiff relinquished the position in January 2022 when he bid on another job. R. Doc. 77-1 at 9–10. Plaintiff maintains that, because he did not learn the position was awarded to another employee until January 2023, this adverse action occurred within the relevant time period. R. Doc. 90 at 5–6. The Court assumes, without deciding, that the loss of job #95575477 is timely, and elects to resolve this Motion on other grounds.

him to be on the plant floor. *Id.* Hampton states that she felt Plaintiff was distracting other employees and that his presence on the plant floor "could have posed a safety hazard, given the presence of machinery and large mail totes" in the area. *Id.* at 2. Hampton attests that when she emailed Plaintiff's supervisor, she was "not aware that [Plaintiff] was on his way either to or from the restroom," and that her "email . . . had nothing to do with restricting [Plaintiff's] access to the restroom." *Id.* at 2. Hampton finally states that she has made similar complaints about other employees in the past, and that her actions were not motivated by Plaintiff's gender, disability, or prior EEO charges. *Id.* at 2–3.

Internal bidding procedures and employee performance and safety concerns are legitimate, nondiscriminatory reasons for the challenged conduct. Plaintiff, in turn, has produced no evidence that these justifications were a pretext for discrimination or retaliation. Instead, Plaintiff's opposition rests entirely on unsupported assertions. Plaintiff claims that USPS management harbored animus toward him due to his gender, disability, and prior EEO charges, and intentionally prevented him from obtaining job #95575477. R. Doc. 90-1 at 12–14. But Plaintiff has produced no evidence suggesting this is true. Plaintiff also claims that Hampton "singled [him] out" because of his protected characteristics and activities, and offers the deposition of Kristi Miller as support. R. Doc. 90 at 17. But Plaintiff has not cited any portion of Miller's deposition transcript corroborating this assertion, nor has the Court's own review identified such support. At this stage, Plaintiff cannot rest his case on unsubstantiated assertions. Because Plaintiff has not produced any evidence of pretext, his discrimination and retaliation claims fail on summary judgment.

**B. Hostile Work Environment: Plaintiff has failed to demonstrate causation.**

Plaintiff has likewise failed to create a genuine issue of material fact on his hostile work environment claims. "A hostile work environment claim is composed of a series of separate acts

that collectively constitute one unlawful employment practice." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 432–33 (5th Cir. 2022) (internal quotation marks omitted). To survive summary judgment on a hostile work environment claim brought under Title VII or the Rehabilitation Act, Plaintiff must show "(1) that he belongs to a protected group; (2) that he was subjected to unwelcome harassment; (3) that the harassment complained of was based on [a protected characteristic]; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action." *West v. City of Houston, Tex.*, 960 F.3d 736, 741 (5th Cir. 2020) (internal quotation marks omitted); *Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 509 (5th Cir. 2003) (describing the elements of an Americans with Disabilities Act (ADA) hostile work environment claim); *Carder v. Cont'l Airlines, Inc.*, 636 F.3d 172, 180 (5th Cir. 2011) (suggesting ADA and Rehabilitation Act hostile work environment claims are indistinguishable). Title VII requires Plaintiff to show that "but for" a protected characteristic, the harassment would not have occurred. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012). The Rehabilitation Act requires Plaintiff to establish the harassment occurred "solely by reason of [] his disability." *Carder v. Cont'l Airlines, Inc.*, 636 F.3d 172, 180 (5th Cir. 2011).

Plaintiff's Amended Complaint alleges several adverse events occurred within the relevant time period: (1) Patrice Jenkins disciplined Plaintiff for missing work after his COVID-19 vaccination; (2) Ronnie Curry refused to award Plaintiff the Tour 2 shift; (3) the USPS kept Plaintiff off work from July 2021 to September 2021; (4) management intentionally delayed his training for job #95575477; (5) management denied him job #95575477; and (6) Hampton's e-mail.

Plaintiff's opposition memoranda offer no support for first three allegations. If there is evidence in the record, Plaintiff has not made it known to the Court. As for the final three allegations, Plaintiff has not demonstrated these events occurred solely by reason of his disability or but for his gender. As aforementioned, Defendant has come forward with evidence suggesting Plaintiff was not selected for position #95575477 because of the USPS's bidding policy and Hampton's e-mail complaint arose out of safety and productivity concerns. Plaintiff, in turn, has not presented any evidence indicating these events occurred as a result his disability or gender. With respect to the training, Defendant provides two reasons why Plaintiff's training for job #95575477 was delayed. First, in her declaration, Anita Smith explains that the USPS's only qualified trainer for job #95575477 had recently retired, the USPS was unable to find a new trainer and schedule a class until October 2021, and this delay affected multiple employees, not just Plaintiff. R. Doc. 77-5 at 4. Second, Plaintiff was removed from the October training because the required medical documentation was not in order. R. Doc. 81-9 at 3. Defendant submits the affidavit of Toni Perkins, USPS Operations Supervisor of Customer Service, who, on the day in question, asked the course instructor to remove Plaintiff. *Id.* Perkins explains that, pursuant to a Collective Bargaining Agreement between Plaintiff's union and the USPS, Plaintiff was required to submit medical documentation stating he was capable of performing his new job within six months of assuming the role. *Id.* at 2–3. Plaintiff submitted medical documentation shortly after he was pre-awarded the position. *Id.* at 3. But because of the delay, by the time training began, more than six months had passed since the date of Plaintiff's medical documentation. *Id.* at 33. Perkins states that it was for that reason, and that reason only, that Plaintiff was removed from class. *Id.* Plaintiff offers no rebuttal nor points to any evidence that his delayed training was the result of his disability or gender. Quite simply, Plaintiff has offered nothing which suggests that

12

any of the events which comprise his hostile work environment claims were the result of unlawful discrimination.

V. **CONCLUSION**

 For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment, R. Doc. 77, is hereby **GRANTED**. All claims of Plaintiff Eldridge Pollard against Defendant David Steiner, Postmaster General of the United States Postal Service, are hereby **DISMISSED** *with prejudice*.

New Orleans, Louisiana, this 23rd day of July, 2026.

_____
THE HONORABLE ELDON E. FALLON

13